POLLAK, District Judge,
concurring and dissenting.
I agree that the sentence of Fuquan Glover, and the conviction and sentence of Erik Johnson, should be affirmed. However, I respectfully dissent from the court’s conclusion that the conviction and sentence of Rasheed Hargrove should be affirmed. I am of the view that Hargrove should be tried again. My reasons follow:
As the court’s opinion explains, government counsel, in his closing argument, stated: “Four buys by law enforcement from Rasheed Hargrove, four buys, big amounts of drugs, no user amounts, four buys.” And, warming to his subject, government counsel later added: “I’ve never dealt drugs. [Hargrove] sold to undercovers four times. I’ve never sold drugs.”
In fact the government had only presented evidence of three Hargrove sales to “undercovers.” When, after the second reference to four transactions, Hargrove’s counsel objected, the trial judge, in the presence of the jury, replied that “the jury will have to determine and I’m sure when you have your opportunity to speak, you’ll remind the jury of any error.... ”
Government counsel, in his rebuttal closing argument, did not recognize and acknowledge the error. Instead, he offered *789 further detail of the non-existent evidence. As the court succinctly puts it, “the latter statement exacerbated the earlier misstatement. ...”
The following day, just before the trial judge was to charge the jury, Hargrove’s counsel requested a curative instruction. The trial judge, uncertain whether the testimony invoked by government counsel supported government counsel’s argument, and having no transcript of the pertinent testimony, ruled as follows:
You know, I know that Mr. Hargrove has not had an opportunity to see the charge, but he was here in court when I said to the jury at the commencement of the case in my preliminary instructions that whatever lawyers say is comment and not evidence, and that you listen to the testimony of the people on the witness stand who took an oath, and in my final charge, I repeat that instruction, so I think I’m going to decline to give any special instruction and I’ll rely upon the instructions in my charge which are comprehensive and that reinforce that principle that any comment by counsel is nothing but comment and is not evidence.
The trial judge’s proposed instruction, which he then incorporated in his charge, was the standard instruction quoted in this court’s opinion. It stated, inter alia, that, “[rjegardless of what counsel or the Court has said in recalling the facts of the case, I want to stress in the strongest possible terms that it is your recollection of the facts which in the final analysis should guide you in carrying out your function as judges of the facts.”
This standard instruction is unexceptionable. And, given that the trial judge had at hand no transcript he could consult, it may be understandable that he did not give the more focused curative instruction — an instruction directed to the particular disputed testimony — that Hargrove’s counsel presumably had in mind.
But we on this court, having the transcript, now know what the trial judge did not know: government counsel was in error — gravely in error — in stating, and then reiterating, that the testimony established four undercover buys from Hargrove.
In view of the great weight of the evidence against Hargrove, my colleagues conclude that, “[tjaken in context, the prosecutor’s statements — although worthy of reproach — do not warrant a new trial.” If this were a routine drug case (and it is a profoundly problematic aspect of the work judges are engaged in day by day that the jurisprudence of drugs can generally be characterized as “routine”), I might not dissent. But this is not a routine drug case. Hargrove has been sentenced to life imprisonment. Before such a sentence is ratified by an appellate court, we should, I submit, make certain that there are no egregious and markedly prejudicial prosecutorial blunders of the sort which are of record in this case. Ordering that a new trial be had — a trial in which Hargrove would receive the process that is due, and nothing less — would seem a very modest price to pay for assurance that the work of the federal courts has been properly performed. Indeed, it is not a price at all. It is an opportunity — an opportunity to be cherished — for lawyers representing the government, and for lawyers representing defendants, and for judges, to do our jobs in ways that continue to merit the confidence of our fellow citizens.